Tim Cook
3901 Taiga Drive,
Anchorage, Alaska 99516
(907) 336-5291
(907 336-5292 fax
tcook@acsalaska.net
Attorney for the Plaintiff

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HAZEL CRAWFORD, ) | |
| ) | Case No. F03-0040CV(RRB) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the court to deny Defendant's motion for summary judgment.

### A.  Introduction

1. Hazel Crawford is Plaintiff. United States of America is Defendant.

2. On December 2, 2003, Plaintiff sued Defendant under the Federal Tort Claims Act (FTCA) for personal injuries sustained in a slip and fall on the walkway outside the Eielson Air Force Base Exchange. The Complaint alleges that employees and agents of the United State air force proximately caused

Crawford v. U.S.                                                                                      Page 1 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

Plaintiff's fall and resulting injuries by negligently failing to use due care in keeping the walkways in good and safe repair and order, by failing to provide caution or warning signs, and by violating appropriate standards and/or regulations.

3. On May 10, 2004, Defendant filed an Answer denying the Defendant's liability for Plaintiff's injuries.

4. On December 1, 2005, Defendant filed a motion for partial summary judgment as to the Defendant's liability for injuries that resulted from negligent design or construction of the curb and walkway outside the Eielson BX. In addition Defendant argued that Alaska's statute of repose bars claims for design defects and code violations.

5. This court granted Defendant's motion for partial summary judgment on Defendant's first motion for summary judgment in an order signed on January 26, 2006.

6. Defendant subsequently filed this second motion for summary judgment on Plaintiff's "remaining allegations of negligence."

7. Summary judgment on this motion is improper because there are genuine issues of fact regarding Defendant's duties to warn of hazards, duty to inspect and duty to maintain walkways in a good and safe condition.

B. Statement of Facts

8. Since completion of the original construction, the United States has had full possession and control of the parking lot and pedestrian route connecting the

Crawford v. U.S.                                                                                              Page 2 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

lot with the entrance to the base exchange.[1] The 354th Civil Engineering Squadron (354th CES), Pavements and Grounds Division is the organization on Eielson AFB with general responsibility and oversight of grounds, pavements, and sidewalks at the base exchange.[2] The facility manager of the base exchange has primary responsibility for conducting monthly inspections of the facility and for notifying 354th CES of any complaints or need for repair maintenance at the facility. CES also has the duty to conduct periodic inspections of base facilities with the facility manager.[3]

9.  Notwithstanding the fact that the "Facilities Manager's Guide" requires the manager to conduct inspections and file monthly inspection reports, Defendant has produced documentation of <u>no</u> monthly inspections and no monthly inspection reports conducted at any time since 1985.[4]

10.  The Defendant has produced two work requests for the accessible route at the BX. These state that the "sidewalk and steps are falling apart in front of the Base Exchange. Concrete is falling apart. It is dangerous to walk on this, please set up to divert traffic or fix it."[5] Despite the serious nature of the defects reported in these 2002 repair requests, no repair was actually done for almost three years,[6] and then only subsequent to the plaintiff's fall.

11.  The accident that caused the injuries of Hazel Crawford took place on September 6, 2000. Upon completing her shopping at the Eielson Base Exchange,

---

[1] ANSWER to COMPLAINT, ¶ 5
[2] Exhibit A- Defendant's Response to Plaintiff's First Discovery, Interrogatory # 8 & 9
[3] Exhibit A- Defendant's Response to Plaintiff's First Discovery, Interrogatory # 10
[4] Exhibit B- Defendant's Response to Plaintiff's First Discovery, Request for Production # 8, and Exhibit D- Defendant's Response to Plaintiff's Second Discovery, Request for Production # 12
[5] Exhibit C- Base Civil Engineering Work Requests, dated 11 April 2002 & 3 June 2002, bates # USAF000000159

Crawford v. U.S.                                                                                      Page 3 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

Hazel Crawford walked down the handicapped ramp towards the parking lot. She paused at the end of the ramp's railing, standing on the landing area, to exchange greetings with another shopper. As she began to step down from the landing to the parking lot, she felt the concrete crumble under her supporting foot, and then give way as she heard a crack and felt her foot slip off the nose of the curb. Crawford lurched forward and fell onto the paved parking lot. Rhonda Moore (the shopper Crawford had spoken with) saw the fall and rendered immediate assistance. When Crawford was unable to stand up on her injured ankle, Moore sought help from the employees at the base exchange. An ambulance was called and transported Crawford to the base clinic.

12. In her written statement on the accident, prepared at the request of the USAF investigators, Rhonda Moore wrote that

> On September 6, 2000 I witnessed a lady fell off of the curve (sic) at Eielson's BX. The lady stepped off of the curve and fell into the parking lot. I went to check on her and she said she heard something crack when she fell….The curve [sic- curb] that she stepped off of was <u>a lot higher than usual</u>. If a person wasn't paying attention to the height they could land wrong and hurt themselves. [7] (emphasis added)

13. On October 2, 2002, a USAF investigator examined the site of Crawford's fall. That investigator stated that the curb was "<u>higher than a normal curb</u> because it is on the side of the handicap access ramp."[8] (emphasis added)

14. Plaintiff's expert witness, Jay R. Smith, P.E. of Northern Mechanical Engineering, Inc., inspection[9] confirmed an excessively high drop off from the

---

[6] Exhibit D- Defendant's Response to Plaintiff's Second Discovery, Admission # 32
[7] Exhibit E- Rhonda Moore statement dated August 28, 2002, bates # USAF0000000157
[8] Exhibit M- USAF Inspection Report, dated October 2, 2002, bates # USAF000000159
[9] Exhibit F- Northern Mechanical Engineering, Inc. Inspection Report

Crawford v. U.S.                                                                                                Page 4 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

curb to the asphalt. (The curb's drop-off ranges from 9 ¼ to 10 ½ inches as compared to a normal curb height of 6 inches.)

15.     In addition, Smith states that deterioration of the concrete curb and the failure to provide the "edge protection" as described in the Uniform Federal Accessibility Standards[10] likely were contributing factors to the Plaintiff's injuries.

16.     Photographs provided by the Defendant show that no warning signs are posted in the area where Hazel Crawford was injured. [11]

C. Standard of Review

17.     Although summary judgment is proper in any case where there is no genuine issue of material fact, this is not a case in which the court should grant such a motion. Fed.R.Civ.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

18.     A Defendant who seeks summary judgment on a Plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact either by (1) submitting summary judgment evidence that negates the existence of a material element of Plaintiff's claim or (2) showing there is no evidence to support an essential element of Plaintiff's claim. *Celotex Corp.,* 477 U.S. 322-325, 106 S.Ct. at 2552-54; *J. Geils Band Employee Benefit Plan v. Smith Barney Shearson, Inc.* 76 F.3d 1245, 1251 (1st Cir. 1996). Defendant cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential

---

[10] Uniform Federal Accessibility Standards (UFAS) § 4.8.7 "Edge Protection"
[11] Defendant's (First) Motion for Summary Judgment, Exhibit D

Crawford v. U.S.                                                                                                         Page 5 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

element of her claim. Rather, Defendant must demonstrate an absence of genuine factual dispute. *See Celotex Corp.,* 477 U.S. at 327, 106 S.Ct. at 2555. Only if Defendant meets its burden is Plaintiff required to respond by summary judgment proof to show a genuine issue of material fact. Fed.R.Civ.P.56(e).

20. In determining whether there is a disputed issue of material fact that precludes summary judgment, the court must consider all evidence in the light most favorable to Plaintiff as the non-movant. *Hom v. Squire,* 81 F.3d 969, 973 (10th Cir. 1996).

### D. Argument

20. The Federal Tort Claims Act waives the government immunity from suits for negligence and makes the government generally liable in the same manner as individuals under state law.[12] The Ninth Circuit Court of Appeals has stated that "the FTCA, as a remedial statute, should be construed liberally, and its exceptions should be read narrowly." [13]

21. This court has previously granted Defendant's motion for summary judgment for the original construction of the curb, sidewalk, and parking areas, stating that "(t)he United States is not liable for any injuries that resulted from negligent design or construction of the curb and walkway outside the Eielson BX."[14] This finding is based upon the fact that independent contractors designed and constructed the original facility and the court's finding that Alaska's statute of

---

[12] 28 U.S.C & 1346 (b)
[13] *Whisnant v. U.S.,* 400 F.3d 1177, 1184 (9th Cir. 2005)
[14] Order Granting Partial Summary Judgment, entered January 26, 2006

Crawford v. U.S.                                                                                             Page 6 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

repose became an effective bar to design causes of action prior to Crawford's fall with regard to the original construction.

22.     In *Whisnant v. U.S.*[15], the Ninth Circuit Court of Appeals, citing a long line of cases, distinguishes between the actions that fall within the design and contractor exceptions under the FTCA from the government's own liabilities for breaches of duties to monitor, ensure safety, provide warnings, and maintain various public facilities.

23.     The U.S. Supreme Court, in Indian Towing Co. v. United States, 350 U.S. 61 (1955), held that the government cannot escape liability for negligent maintenance of a public facility once the government exercises its discretion to build and operate the facility. [16]

24.     In *Chaffin v. U.S., 176 F.3d 1208, 1212*, the Ninth Circuit noted that, under Alaska law, several theories of negligence might still bind the government in a situation where the United States would otherwise escape liability because independent contractors were responsible for design, construction, and various ongoing operations at the facility in question.[17]

25.     One of these theories of negligence is Restatement of Torts, § 343, which imposes liability on a landowner that fails to maintain property in a safe

---

[15] 400 F.3d 1177, 1181- 1185 (9th Cir, 2005)

[16] "The Coast Guard need not undertake the lighthouse service. But once it exercised its discretion to operate a light…, it was obligated to use due care to make certain that the light was kept in good working order; and, if the light did become extinguished, then the Coast Guard was further obligated to use due care to discover this fact and to repair the light or give warning that it was not functioning. If the Coast Guard failed in its duty and damage was therefore caused to petitioners, the United States is liable under the Tort Claims Act."

[17] In the instant case, unlike the situation in Chaffin, there is no dispute that the Defendant, in the persons making up the USAF's 354th Civil Engineering Squadron and the then current Base Exchange Facility Manager, shared a general responsibility for oversight as well as maintenance and repair of sidewalks, ramps, curbs, and stairs at the entrance to the base exchange.

Crawford v. U.S.                                                                                   Page 7 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

condition. As Alaska has adopted it, it provides: "A landowner. . .must act as a reasonable person in maintaining his property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk."[18]

26.     In its Motion for Summary Judgment, Defendant refers to the defects in the curb as "minor imperfections"[19]. However, Defendant's 2002 repair requests note that the steps and sidewalk in front of the BX were "falling apart" and "dangerous to walk on".[20] Although Defendant has denied that these repair orders refer to the exact spot where Hazel Crawford fell, the entire concrete walkway (which is the subject of the repair orders and the place where Plaintiff fell) was poured at the same time, subject to the same elements over the years, and treated with the same deicers. Therefore, the structural integrity of the concrete throughout the walkway would be essentially the same, that is, "falling apart". That one section of the walkway was so obviously deteriorated that the facility manager requested that the walk be closed to pedestrians does not prove that the adjacent area was not in need of repair, but rather is support for the contention that the area where plaintiff fell was also deteriorated.

27.     Defendant states that it finds nothing unusual about "cracks and chips on an outdoor curb".[21] However, the likelihood that the very substance of the concrete will fall away beneath your feet at the edge of a curb is unusual. A

---

[18] Chaffin v. U.S. 176 F.3 1208,1212-1213 (9th Cir. 1999); Webb v. City and Borough of Sitka, 561 P.2d 731, 733, as cited in Moloso v. State, 644 P.2d 205, 219
[19] United States' Motion for Summary Judgment, page 2

Crawford v. U.S.                                                                 Page 8 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

sidewalk crumbling away beneath the feet is so unexpected as to be a hidden danger which creates a high likelihood of injury to those using the walkway.

28.     The Alaska Supreme Court, in *Moloso v. State*, 644 P.2d 205, 219, has held that "(i)mplicitly included in this (landowner's) duty is the duty to warn of hidden dangers of which the entering person is unaware."

29.     The element in Crawford's cause of action for breaches of the duty to warn which Defendant disputes most vigorously is whether there was a "hidden danger". Hidden dangers are alternatively described by the *Moloso* court as a "latent hazardous condition" and "concealed condition". [22]

30.     Clearly, the fact that the structural integrity of the sidewalk was so defective as to crumble beneath the feet was a hidden danger. But the fact that the curb was 75% higher than normal also constitutes a hidden danger.

31.     Jay Smith, P.E. of Northern Mechanical Engineering, Inc. states in his inspection report that "(t)he curb height in the area of the fall was not standard for a step according to the IBC and UBC for tread rise of building steps. The curb height was also excessive for standard curb design of the Municipality of Anchorage."

32.     In addition, Smith documented with photos and in his report that "(t)he nose of the curb had deteriorated where the edge is falling apart" in the area where Crawford fell. Deicers regularly used in maintaining roads, parking lots,

---

[20] Exhibit C- Base Civil Engineering Work Requests, dated 11 April 2002 & 3 June 2002
[21] United States' Motion for Summary Judgment, page 2
[22] 644 P.2d 205, 219

Crawford v. U.S.                                                                                         Page 9 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

and walkways can both cause and contribute to the deterioration of concrete, leaving a pitted surface filled with the debris left from the eroding concrete.[23]

33.     While the curb itself was in plain view, Plaintiff contends that the excessive height was, in actuality, concealed to a user of the facility who was carrying a shopping bag and stepping down from the sidewalk into the parking lot. As stated in the Florida Architect Journal's "Slip and Fall Primer":

> The brain must properly perceive the change in elevation if it is to successfully negotiate a stairway or ramp. Any variations from what the brain has been taught to expect will result in improper placement of the foot and could result in a slip and fall accident.[24]

34.     The four inch variation—a 75% increase—from a normal curb height is dangerous precisely because it is not readily discernible from above, but is excessive enough to cause a pedestrian expecting a normal step distance to lurch and stumble when the pavement is not found where expected.

35.     As clarified in *Chance v. Lawry's INC.,* 58 C2d 368, 344 P.2d 185, a "business invitee is not obliged to make a critical examination of the surroundings he is about to enter, but on the contrary has the right to assume that those in charge have exercised due care in the matter of inspection, and have taken proper precautions for the safety of the patrons, and will use reasonable care in guarding him against injuries."[25] The chipping and crumbling on the nose of the curb combined with the excessive height of the curb posed an unapprehended danger for Crawford.

---

[23] Exhibit G- "Effect of Various Deicing Chemicals on Pavement Concrete Deterioration"
[24] Exhibit H-"Slip and Fall Primer" from Florida Architect Journal, July/August 1987
[25] Chance v. Lawry's INC, 58 C2d 368, 373, 374; 344 P.2d 185 ( While both California and Alaska have abrogated the invitee/licensee/trespasser distinctions since the *Chance* decision, that should not weaken the duty owed patrons of a business.)

Crawford v. U.S.                                                                                               Page 10 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

36.     Defendant states in its motion that "USAF had no notice of any dangerous condition" and that it had "no duty to warn of an unknown danger." *Newton v. Magill*[26] is quoted in Defendant's Motion to support the contention that "(a) landowner is not liable in negligence for a condition that is unknown and cannot be discovered with reasonable care."[27] This seems intended to give the impression that, for some reason, Defendant could not inspect the sidewalk. Why Defendant believes it could not inspect is not explained.

37.     Clearly, knowledge of the condition of the sidewalk in front of the most heavily used pedestrian walkway at the base is the responsibility of Defendant. That responsibility is defined in the Facility Manager's Guide[28] which states:

> Work required to preserve or restore an existing facility is categorized as maintenance and repair work.  Some examples are: repainting, replacing floor tile or light fixtures, and repairing heating systems.  Identify these requirements by conducting regular monthly inspections of your building and its RPIE.
> Facilities Manager's Guide, Page 4

38.     Defendant admits that there is no record of ANY inspections[29], although such records are a key element in identifying and correcting potential problem areas on Eielson AFB according to the Facilities Manager's Guide.

> The <u>records you keep will</u> give the BCE a chronological history of your building. They provide trends in maintenance and repair requirements and <u>identify potential problem areas so they can be corrected before they become major problems</u>.  They also tell when it is time to start thinking about new construction, rather than maintenance and repair.  Your records file may contain:
> (1) Your local regulations
> (2) This handbook
> (3) <u>Building Manager's log</u>, and copies of submitted AF Form 332's
> (emphasis added)        Facility Manager's Guide, page 11

---

[26] 872 P.2d 1213, 1218 (Alaska 1994)
[27] United States' Motion for Summary Judgment, page 6
[28] Exhibit I- Facility Manager's Guide, Eielson AFB
[29] Exhibit B- Defendant's Response to Plaintiff's First Discovery, Request for Production # 8; Exhibit D- Defendant's Response to Plaintiff's Second Discovery, Request for Production # 12

Crawford v. U.S.                                                                                                Page 11 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

39.     This neglect to follow USAF policy and procedure is likely the reason, as Defendant contends, that USAF had "no notice of any dangerous condition"[30]. But it does not explain Defendant's contention that it could not have known what the condition of the sidewalk was and therefore should not be liable for negligence. Defendant could have, and should have, known of the sidewalk's defects— the deteriorating condition of the concrete and the excessive height of the drop-off—simply by making its required monthly inspections. Therefore, according to the reasoning in *Newton*, Defendant is liable in negligence for that which it "reasonably should have known of the defect and had a reasonable opportunity to repair it."[31].

40.     In addition to the federal government's own policy for conducting regular inspections, there is a common law duty in Alaska to inspect. In *Moloso v. State*[32], the court observed that "landowners have a duty to warn entering persons of hidden dangers of which the entering persons are unaware. Implicit in this duty is a duty to inspect for hidden dangers."[33]

41.     The fall and the injuries sustained by Plaintiff are the foreseeable result of both the deteriorating structural integrity of the sidewalk, and the "higher than a normal curb" on the landing area at the bottom of an entrance ramp into the BX. Defendant could easily have remedied these conditions. The required monthly inspection would have revealed the deterioration of the sidewalk which could have been repaired. And the excessive step height of the sidewalk could have

---

[30] United States' Motion for Summary Judgment, page 2
[31] *Newton v. Magill,* 872 P.2d 1213, 1218 (Alaska 1994)
[32] 644 P.2d 205, 219 (Alaska 1982)
[33] *McCubbins v. State, DNR* 973 P2d 588 (Alaska 1999)

Crawford v. U.S.                                                                           Page 12 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

been either altered by adding more pavement below the curb (thus decreasing the step height), or by installing railings, walls or other edge protection on the drop-off side of the landing. In lieu of altering the curb height or providing a barrier, the Defendant should simply have placed a sign or painted warnings on the higher than normal curb to warn pedestrians of the danger.

42.     The United States does not have liability for designing and constructing this excessively high curb, since that design and construction was performed by independent contractors. The United States also does not have responsibility under a negligence-per-se theory for failure to provide "edge protection", in the form of a railing, wall, or projecting surface, as required by the Uniform Federal Accessibility Standards because those standards only became effective a few months after the facility was constructed.  However, under Alaska law and the FTCA, as a landowner the United States DOES have responsibility for managing and maintaining the facility so as not to cause an unreasonable risk of harm to those making the expected use of the facilities. To the extent it poses a hidden or concealed dangers, the "higher than a normal" curb (with its deteriorating concrete "nose") triggers a duty to warn.

43.     Defendant cites the Ninth Circuits decision in *Poston v. U.S.*, 396 F.2d 103 (9th Cir. 1968), as support for its argument that any dangers existing at the walkway into the BX were obvious and therefore did not trigger the landowner's duty to warn. However *Poston* is readily distinguishable. In *Poston*, it was because the Defendant was neither an owner nor occupier of the land that the court found no duty was owed the Plaintiff. *Poston's* determination of whether

Crawford v. U.S.                                                                                          Page 13 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

one worker should have warned another worker (for another employer) of the danger posed by electric wires when the second worker took it upon himself to remove the guide wires supporting an electric pole has no similarity to the government's duty to warn customers of its BX facility of an abnormally high drop-off of its curb.

44.     In 1962, the California Supreme Court had occasion to address the question whether an object in plain view could nevertheless trigger the duty to warn of hidden dangers. In *Chance v. Lawry's Inc.*, 58 C2d 368, 344 P.2d 185, the Plaintiff fell into an empty planter box while attempting to exit through the foyer of a busy restaurant. The restaurant Defendant argued that "it was under no duty to warn its patrons because the danger of the open planter box was so obvious that it could reasonably anticipate that patrons would see and apprehend the danger." However, the California court held that the obviousness of the danger was a fact question for the jury and that the jury could reasonably conclude that Lawry's could not have reasonably expected that its patrons would necessarily see the planter box and apprehend the danger.[34]

45.     Therefore, an object can be in plain view but still pose a concealed danger if the visitor cannot reasonably be expected to apprehend the danger. This is especially true in the case of an excessively high step where, by merely looking straight down at an edge, the drop-off height is impossible to discern. In the case of steps, even a small variation from the normal and expected step height, a variation that is not readily discernible to a pedestrian's eye, can nevertheless be dangerous.

Crawford v. U.S.                                                                                              Page 14 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

46. As stated in "A Slip and Fall Primer", published in the July/August 1987 edition of the <u>Florida Architect Journal</u>,

> It is imperative that in the future there be little or no variation between riser systems (most codes require uniformity in risers within a 3/16 inch). Studies of stair accidents have indicated that the majority of stairs on which accidents occurred had riser height variations.

47. The California Superior Court addressed both the obviousness and the danger posed by an eight-inch curb on the edge of a ramp in *Mizel v. City of Santa Monica*.[35] The court held that such a curb could be both non-obvious and dangerous, in part due to the difficulty pedestrians have in discerning height variations while approaching a curb. The Superior Court held,

> The eight-inch height differential on the curb making any danger not obvious, the proximity of the curb to the cars in Shutters' carport, <u>the difficulty pedestrians had distinguishing height differentials</u>, the inherent tripping potential of a variable face curb, the lighting conditions, and the lack of planters, all pointed to conclusion that the curb was a dangerous condition…. All of this evidence would support a finding that the curb was a substantial risk of injury. (emphasis added) Super. Ct. No. SC051440

48. As stated in California's *Rowland v. Christian* decision, and favorably quoted by the Alaska court in *Moloso*, "(w)hether or not the guest has a right to expect that his host will remedy dangerous conditions on his account, he should reasonably be entitled to rely upon a warning of the dangerous condition…" 443 P.2d 561, 568, as quoted at 644 P.2d 205, 219

49. However the BX provided no warning sign, no painted warning on the curb, no warning of any kind that the curb required extra care to navigate safely. That neglect by Defendant to warn of possible dangers unnecessarily left

---

[34] 58 C2d 368, 374

Crawford v. U.S.                                                    Page 15 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

dangerous conditions hidden from the public. As a direct result of Defendant's improper maintenance of the sidewalk and the lack of a barrier or signs warning of the excessive height of the curb, Hazel Crawford fell and sustained considerable injuries.

50.     In its Motion, Defendant states that "(c)urbs are inherently dangerous things." It goes on to discuss several Louisiana cases in which people fell on curbs to show, apparently, that people sometimes trip on curbs but that the courts of Louisiana did not find the curb owner responsible. Neither case, however, fits the facts as they stand in this case. In neither of the Louisiana cases was there any mention of a curb that stood 75% higher than the normal curb with an edge that crumbled beneath the foot. The fact that someone in Louisiana once tripped on a curb without the curb owner being held liable does not negate the government's responsibility, under Alaska law, to discover and to repair, or at least to warn, visitors of possible danger. Alaska courts have consistently taken an expanded view of the landowner's duty to inspect and repair or warn guests of dangerous conditions, a duty which Defendant clearly breached.

51.     Hazel Crawford did not trip on the curb in front of the BX out of carelessness. She fell because the curb edge crumbled beneath her foot. Photos taken of the curb show breaks in the nose of the curb where the concrete has fallen away.[36] As Hazel lurched forward attempting to regain her balance, her foot found the ground of the parking lot not 6 inches down as would be expected (as a

---

[35] *Mizel v. City of Santa Monica, B139968*, Cal. Ct of Appeals 2nd Dist., Attached as Exhibit J
[36] As documented in Defendant's (First) Motion for Summary Judgment, Defendant's Exhibit D

Crawford v. U.S.                                                                                             Page 16 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

standard curb would be), but 10 ½ inches below the height of the sidewalk. This 75% increase in falling distance (over what would be the normal distance to fall from a curb) very likely caused Plaintiff to fail in her attempt to catch herself and to sustain injuries far greater than would be expected if the step down had been at the expected place.

52. Since her fall, Hazel Crawford's life has been turned upside down. Due to her injuries, she has been unable to work for the last five years and unable to pay for the operations that might restore her ability to obtain enough mobility to return to work. After the USAF rejected her claim for compensation, Crawford filed this case as a *pro se* litigant in 2002 and then struggled to navigate the legal process seeking to obtain some compensation and some justice.

53. The Defendant has never compensated her in any way, but rather has vigorously contested all liability. The Defendant has succeeded in limiting Crawford's claims based on the original construction/negligent design, using the independent contractor exception. The Defendant has also avoided claims for the original construction premised on negligence *per se* for failing to provide the protections of UFAS because the original construction was completed a few months before the UFAS became effective for military facilities.

54. However genuine issues of material fact do exist as to the Defendant's negligent failure to perform and document required inspections, negligent maintenance, and breaches of the duty to warn.

Crawford v. U.S.   Page 17 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

F. Summary Judgment Evidence

55. In support of its response, Plaintiff includes the following evidence in the attached appendix:

    a.    Affidavits & Declarations.

        Affidavit of Jay Smith, Exhibit L

    b.    Interrogatories & Requests for Admissions.

        1. Defendant Response to Plaintiff's First Discovery, Exhibit A

        2. Defendant Response to Plaintiff's Second Discovery, Exhibit D

    c.    Other discovery.

        1. Rhonda Moore written statement (USAF 000157), Exhibit E

        2. USAF Inspection Report, dated October 2, 2002 (USAF 000159), Exhibit M

        3. Base Civil Engineer Work Requests, dated April 11, 2002 and June 3, 2002 (USAF 000591- 000592), Exhibit C

        4. Facility Manager's Guide, Eielson AFB, Exhibit I

        5. Photographs, USAF000587, 588

    d.    Reports and Other Authoritative Sources

        1. Northern Mechanical Engineering, Inc. report, Exhibit F

        2. "A Slip and Fall Primer", Florida Architect Journal, Exhibit H

        3. "Effect of Various Deicer Chemicals on Pavement Concrete Deterioration", Mid-Continent Transportation Symposium, Exhibit G

    e.    Court Decision Referenced

        Mizel v. City of Santa Monica, CA Superior Court, Exhibit J

Crawford v. U.S.        Page 18 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

### G.  Conclusion

56. For these reasons, Plaintiff asks the court to deny Defendant's motion for partial summary judgment.

Respectfully submitted this 27th day of April, 2006,

*s/s* _TIM COOK_

Tim Cook, Attorney for Plaintiff Hazel Crawford

Alaska Bar Card # 9007048

**CERTIFICATE OF SERVICE**

Filed Electronically

Crawford v. U.S.                                                               Page 19 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment

# INDEX OF EXHIBITS

Exhibit A    Defendant's Response to Plaintiff's First Discovery,
             Interrogatory 8, 9, & 10

Exhibit B    Defendant's Response to Plaintiff's First Discovery,
             Request for Production # 8

Exhibit C    Base Civil Engineering Work Requests,
             dated 11 April 2002, 3 June 2002, 2 October, 2002,

Exhibit D    Defendant's Response to Plaintiff's Second Discovery,
             Admission # 32, Request For Production # 12

Exhibit E    Rhonda Moore statement,
             dated August 28, 2002,
             bates # USAF0000000157

Exhibit F    Northern Mechanical Engineering, Inc.
             Inspection Report

Exhibit G    "Effect of Various Deicing Chemicals on
             Pavement Concrete Deterioration"

Exhibit H    "Slip and Fall Primer"
             from Florida Architect Journal, July/August 1987

Exhibit I    Facility Manager's Guide, Eielson AFB

Exhibit J    *Mizel v. City of Santa Monica,*

Exhibit K    Photographs of Curb face

Exhibit L    Affidavit of Jay Smith

Exhibit M    USAF Inspection Report, dated October 2, 2002

Crawford v. U.S.                                              Page 20 of 20
Case No. F03-0040CV(RRB)
Plaintiff's Opposition to Defendant's 2nd Summary Judgment