NELSON P. COHEN
Acting United States Attorney

SUSAN LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska 99513-7567
Telephone: (907) 271-5071
Fax: (907) 271-2344
susan.lindquist@usdoj.gov

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| HAZEL CRAWFORD,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>UNITED STATES OF AMERICA<br><br>　　　　Defendant. | Case No. 4:03-cv-40-RRB<br><br>**UNITED STATES' TRIAL BRIEF** |

　　　Defendant, United States, through counsel, presents its trial brief according

to Local Rule 39.2

## INTRODUCTION

　　　Hazel Crawford ("Crawford") stepped off a curb and fell on September 6,

2000.  The contractor substantially finished building that curb more than ten years before her fall.  Crawford's cause of action for negligence based on code violations is bared by the statute of repose and the Federal Tort Claims Act bar for acts done by independent contractors.

Crawford claims that the United States Air Force ("USAF") altered the area and thus it was required to make the entire space handicap accessible according to current standards.  Her claim fails because there was no change in the ramp, the curb, or handrails in the area where she fell.  The USAF did not change any architectural or mechanical component of the space, and therefore it had no duty to make the entire space accessible.  Moreover, the Uniform Federal Accessibility Standards ("UFAS") were created "so that physically handicapped persons will have ready access" to facilities.  Crawford is not handicapped and had full access to the facility.  She has no standing to sue for violations of the UFAS.

Crawford clams the curb was too high and therefore the USAF should have warned of its danger.  The curb is not too high and its height is immediately obvious because it's on a ramp.  The contour of the ramp shows that the curb is not at street level.  Moreover, there was no code violation because there are no codes for curbs in parking lots.   The USAF had no notice that the curb was dangerous because there is no known reported fall in the area.

Crawford claims the USAF did not inspect and maintain its property because it has no reports. The Facility Manager's Guide does not mandate inspection reports. Reports are only made when a work request is made. As the curb was not in disrepair, there was no repair requested. The curb only showed the normal wear and tear of a cement edging that is common throughout Alaska.

## I.   PARTIES

Hazel Crawford sued the United States, as the property owner of the USAF Base Exchange ("BX") at Eielson Air Force Base in Fairbanks, Alaska. She claims the USAF failed to do the following:

- to keep the curb in good and safe repair.
- to warn that the curb was unsafe
- to abide by appropriate standards and/or regulations.

The USAF claims that it maintained its property in a reasonably safe condition and that there was no hidden danger that created a duty to warn Crawford about the curb. Moreover, the USAF had no duty to remodel the curb and surroundings to bring it up to the current code because it did not modify the area in a manner to trigger any duty.

## II.   LEGAL THEORY AND DEFENSES

   A.   Issue that are the Law of the Case.

      1.      The United States is not liable for the original design and construction of the handicap ramp. Independent contractors designed and constructed the handicap ramp.  Dkt 30 at 1.

      2.      The United States is not responsible for any code violation which occurred at the time of the original construction because the statute of repose bars Crawford's claims.  Dkt 30 at 2.

      3.      Crawford was not handicapped at the time of her injury and does not have standing to bring a suit based on the violation of a code designed to assist handicapped people.  Dkt 30 at 2.

B.    Issues for trial

      **1.      Did the USAF modify the ramp or its surrounding area?  If so, does any law maintain that the modification triggered a duty for the USAF to reconstruct the ramp to current code?**

The Ninth Circuit presented this issue as follows:  "[W]hether the sidewalk or ramp were altered subsequent to the original construction."  Memorandum at 2.

USAF's position: The USAF made one change in the area of the ramp.  In the area off the curb, there is an indication that a sign post has been cut off to the level of the pavement.  Now there is a new post with a sign designating the two parking spots nearest the ramp as reserved for the Base and Wing commanders.  The blue print indicated that these spots were to be for handicap parking.  But they are on a slope.  At some time, that is unknown, the USAF re-located the handicapped parking spots to a flat area across from the driving lane.  The USAF maintains that the change promoted access for the handicapped.

Mr. Putnam will testify that he checked the area of the ramp for conformity with the blueprint and other than other than the admitted change in the handicapped parking spots, he found no alterations from the plan to the sidewalk or ramp.

Mr. Putnam will testify that he inspected the archives of the USAF and did not find any documents attesting to changes after the original construction.

Inherent in this issue of whether an alteration was made, is the question of what type of a modification creates a duty in a land owner to bring its property up to code. The UFAS defines what an alteration is in the Definition section:

> *ALTERATION.* As applied to a building or structure, means a change or rearrangement in the structural parts or elements, or in the means of egress or in moving from one location or position to another. It does not include normal maintenance, repair, reroofing, interior decoration, or changes to mechanical and electrical systems.

> The UFAS further defines what an element is:
>
> *ELEMENT.* An architectural or mechanical component of a building, facility, space, or site, e.g., telephone, curb ramp, door, drinking fountain, seating, water closet.

When an alteration is made to an element of a facility, the UFAS requires the following:

> **4.1.6 ACCESSIBLE BUILDINGS. ALTERATIONS.**
> **(1) GENERAL.** Alterations to existing buildings or facilities shall comply with the following:
>
> (a) If existing elements, spaces, essential features, or common areas are altered, then each such altered element, space, feature, or area shall comply with the applicable provisions of 4.1.1 to 4.1.4 of 4.1, Minimum Requirements.

The UFAS also recognize that small changes, that may not independently amount to an alteration triggering a duty to upgrade, can create such a duty if small changes are considered together.

> (c) If alterations of single elements, when considered together, amount to an alteration of a space of a building or facility, the entire space shall be made accessible.

This section infers that a small change standing alone does not trigger a duty to make an entire space accessible. It is only when the changes collectively amount to an alteration of an element that the entire space must be made accessible.

In our case, changing a sign should not even be considered an alteration of an element that would trigger any duty to upgrade. The government also may have black toped over painting of handicap symbols in the tarmac, but there is no witness who can even state that the spots were ever painted. Removing paint should be considered a redecoration, something similar to which does not trigger a

duty to upgrade.

### 2. Does the height of the curb present a hidden danger of which the USAF had a duty to warn?

The Ninth Circuit presented the issue as follows: "[W]hether the height of the curb presented a hidden danger of which the Government had a duty to warn." Memorandum at 2.

The USAF's position: Mr. William Kim will testify that there are no codes for curbs in parking lot areas. He will testify about the height of the curb as he designed it on the blue print. He will also testify that during construction, the lay of the land sometimes mandates that changes are made from the original design.

The USAF had no special knowledge about any danger that created a duty to warn. See Dkt 40 at 5-12. Mr. Putnam and Ms. Borden will testify that they have stepped off the curb without problem. In addition, Mr. Putnam checked the records at Eielson AFB and they do not reveal any report of falls from that curb. The photographs show that the curb height declines as a pedestrian goes down the ramp.

Crawford's prior statements about how she fell indicate that it was the cement crumbling that affected her balance. She does not state that the height of

the curb caused her to lose her balance.

### 3. Did the USAF fail to maintain the curb?

USAF position: The Facility Manager's Guide notes that there will be periodic inspections of the facility by the Eagle team. It states that "[w]ork performed by the eagle team will be documented on an AF form 1219" and it refers to form 2b which is a "BCE Multi-craft job order" The manual does not mandate that the facilities manager keep written records of inspections.

Cement is not something that needs regular maintenance. The cement edge did not show anything other than normal wear. Even Crawford did not notice any unusual appearance of the sidewalk prior to her fall. Ex. G at 4. There is no evidence about the use of de-icers on the ramp and curb before Crawford's fall.

## III. Identification of the Pleadings

| | |
|---|---|
| Dkt 22 | U.S. Motion for Partial Summary Judgment on the issue of independent contractor immunity, the statute of repose, and handicap status |
| Dkt 25 | Crawford's Response in Opposition |
| Dkt 27 | U.S. Reply |
| Dkt 30 | ORDER granting U.S. Motion for Partial Summary Judgment |
| Dkt 40 | U.S. Motion for Partial Summary Judgment on the issue of duty to maintain property and duty to warn of a dangerous condition |

Dkt 41     Crawford's Response in Opposition
Dkt 45     U.S. Reply
Dkt 46     ORDER granting US Motion for Partial Summary Judgment

## IV.   Evidentiary Issues

The government objects to several of Crawford's exhibits:

Exs. 1-11:  Photographs Fed. R. Evid. 402:  Relevance - These photographs were taken approximately five years after the event and may not represent the curb's condition on the day of the fall.

Ex. 15:   Witness statement: Fed R. Evid. 802:  Hearsay.

Exs 18 & 19:  Work orders requested 1.5 years after the fall:  Fed. R. Evid. 402: Relevance.

Ex. 21:  Crawford's diary:  Fed R. Evid. 802:  Hearsay.

## V.   Controlling Authority

>Uniform Federal Accessibility Standards (UFAS) (Appendix A to 41 CFR part 101-19.6).  Available on the www with a search for its name.
>
>Restatement (Second) of Torts § 343 (1965)
>
>Postan v. United States, 396 F.2d 103, 107 (9th Cir. 1968)
>
>Newton v. Magill, 872 P.2d 1213, 1218 (Alaska 1994)
>
>Moloso v. State, 644 P.2d 205, 219 (Alaska 1982).
>
>Webb v. Sitka, 561 P.2d 731, 733 (Alaska 1977)

# CONCLUSION

The USAF cannot be legally blamed for Crawford's fall. Falls simply happen in the absence of negligence.

Respectfully Submitted this 28th day of February, 2008, in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Susan J. Lindquist
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2008, a copy of the foregoing **United States' Trial Brief** was served electronically on Tim Cook.

s/ Susan J. Lindquist